**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|                                          |   |                              |
|------------------------------------------|---|------------------------------|
|                                        : |   |                              |
| MICHAEL PAUL MCDANIEL,                 : |   | Civil No. 05-4817 (AET)      |
|                                        : |   |                              |
|              Petitioner,               : |   |                              |
|                                        : |   |                              |
|         v.                             : |   | **O P I N I O N**            |
|                                        : |   |                              |
| DEVON BROWN, et al.,                   : |   |                              |
|                                        : |   |                              |
|              Respondents.              : |   |                              |
|                                        : |   |                              |

**APPEARANCES:**

Michael Paul McDaniel, <u>Pro</u> <u>Se</u>
#408833/SBI 201206C
Northern State Prison
168 Frontage Road, P.O. Box 2300
Newark, NJ 07114-3721

Roberta DiBiase
Assistant Prosecutor
Ocean County Prosecutor's Office
119 Hooper Avenue
Toms River, NJ 08753
Attorney for Respondents

**THOMPSON, District Judge**

Petitioner, Michael Paul McDaniel, filed the within petition
for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254.
Respondents have filed an Answer.  Petitioner has also filed two
motions, which Respondents have opposed: a motion for discovery,
and a motion for counsel.  The Court has considered all
submissions.  For the reasons set forth below, the Petition and
the motions will be denied.

**BACKGROUND**

1.   Factual Background

This petition involves two incidents.  The first incident occurred on November 28, 1999.  The second incident occurred on February 8, 2000.  Both incidents occurred at the same location- a Wawa convenience store in Lakewood, New Jersey.

With regard to the November 28, 1999 incident, Petitioner's brief in support of his direct appeal (Respondents' Appendix ("Ra") 1), states that Petitioner entered the Wawa and purchased a lollipop.  As the cashier processed the sale, Petitioner took money from the register.  The cashier was not injured, and the only allegation of force was a "push."

The cashier described the thief as a "Hispanic Male, approximately 5'6" to 5'10" . . . in his late twenties [to] early thirties."  Petitioner is an African-American male who is 5'4" tall and weighs 180 pounds.  He was twenty-two at the time of the incident.

The facts of the second case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation:

> On February 8, 2000, at approximately 11:15 p.m.,
> defendant entered a Wawa store located in the Town of
> Lakewood.  While Miguel Lopez, a register clerk,
> explained to another register clerk how to record
> defendant's purchase, defendant reached into the open
> cash drawer in an attempt to grab the cash contained

2

therein.  Lopez immediately slammed the drawer shut on the defendant's hand.  The two men began to struggle.  At one point, defendant pushed the employee away and attempted to leave the scene with the cash clutched in his hands.  Lopez shouted, "I'm being robbed," and set off the alarm which was near the register.

Cleaning men Stephen Policastro, Richard Jupinka and Carlos Santore were waxing the floors, and heard the Lopez call for help.  They turned and saw the defendant and Lopez struggling.  The three men pursued and tackled the defendant as he attempted to escape.  Defendant dragged the men outside of the store, biting Jupinka on the left shoulder.  Defendant recognized Policastro and threatened to find and kill him if he did not let him go.

Lakewood police officer Robert Anderson arrived at the scene and found defendant on the ground, being held by the three men.  Two other officers assisted in the arrest, while defendant continued to fight and kick.  After subduing him, Officer Anderson removed two (2) ten dollar ($10.00) bills from defendant's hand.

The events which occurred inside the store were recorded on videotape by four surveillance cameras.  The videotapes were played for the jury twice during the course of the trial.  Jupinka and Lopez both described the events transpiring on the tapes while the jury viewed them.

See State v. McDaniel, A-681-01T4 (App. Div. Jan. 17, 2003), at

pp. 2-3.

2.  Procedural History

With regard to the events occurring on November 28, 1999, on

September 9, 2000, an Ocean County Grand Jury indicted Petitioner

on one count of second degree robbery, contrary to N.J.S.A.

2C:15-1.  With regard to the second incident of February 8, 2000,

on October 4, 2000, an Ocean County Grand Jury indicted

Petitioner with another count of second degree robbery, contrary to N.J.S.A. 2C:15-1.

On July 2, 2001, Petitioner pled guilty to the indictment returned on September 9, 2000 regarding the first Wawa incident. On June 27, 2001, Petitioner was found guilty of second degree robbery after a trial by jury with regard to the second Wawa incident.

On August 9, 2001, Petitioner was sentenced on both indictments to two ten-year terms of incarceration to be served concurrently, with four years parole ineligibility.  Petitioner received 2 days jail credit on the indictment to which he pled guilty.  He received 340 days jail credit on the indictment which was tried before a jury.

Petitioner appealed his conviction and sentence.  On January 17, 2003, the Superior Court of New Jersey, Appellate Division ("Appellate Division") affirmed.  Petitioner filed a petition for certification with the New Jersey Supreme Court.  The petition was denied on March 28, 2003.

On June 6, 2003, Petitioner filed a petition for post-conviction relief ("PCR").  The petition was denied on July 16, 2003.  Petitioner's motion for additional jail credits also was denied that day.  Additionally, Petitioner filed a motion for a change in sentence to be transferred to a drug program, which was denied in the July 16, 2003 Order.  Petitioner appealed the

denial of the motions and the Appellate Division consolidated the appeals.  On February 24, 2005, the Appellate Division affirmed the denials.  On June 22, 2005, the New Jersey Supreme Court denied certification to further review the matters.[1]

The instant petition was filed on October 4, 2005.  On October 19, 2005, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  On March 13, 2006, Respondents filed an Answer and the state court record.

On March 28, 2006, Petitioner filed a motion to produce certain documents (docket entry 13).  Respondents replied to the motion on April 10, 2006.  Petitioner also filed a motion for counsel on May 26, 2006 (docket entry 16).  Respondents opposed the motion on May 30, 2006, and Petitioner replied to the opposition on June 15, 2006.

## DISCUSSION

### A.   Petitioner's Claims.

Petitioner asserts the following arguments for habeas relief:

1.   Guilty plea was induced and not voluntary.
2.   Prosecutor withheld exculpatory evidence from the grand jury, rendering indictment improper, and withheld evidence from the defendant.
3.   Ineffective Assistance of Counsel-Guilty plea was not voluntary.

---

[1]   The Court also notes that on June 23, 2003, Petitioner filed a petition for a writ of habeas corpus in this Court.  The petition was dismissed, without prejudice, on November 3, 2003.

    4.    Petitioner's sentence is excessive, and violates <u>Booker</u> and <u>Apprendi</u>.
    5.    Locked courtroom violated his right to confront witnesses and his right to a public trial.
    6.    Trial Judge bias.

A number of Petitioner's claims are repeated throughout his Petition and brief. The submission received from Petitioner exceeds 130 pages; most pages are typewritten and single-spaced.

The Court also notes that Petitioner cites a number of excessive force violations and a medical care claim within his brief. These claims are not proper in a habeas petition, which challenges only Petitioner's conviction and custody. Petitioner may bring the excessive force and any other claims challenging the conditions of his confinement in a civil action under 42 U.S.C. § 1983, if he so chooses.

Petitioner has raised the instant claims before the New Jersey state courts. To the extent that any of the claims are not exhausted, this Court exercises its discretion to decide them on the merits, in accordance with 28 U.S.C. § 2254(b)(2).

**B.**    **Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

6

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to

7

that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999). Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record. See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001).

In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id. Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)). "A finding that is well-supported and subject to the presumption of correctness is not unreasonable." Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001). A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520

9

(1972).  A <u>pro</u> <u>se</u> habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v.</u> <u>Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United</u> <u>States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert.</u> <u>denied</u>, 399 U.S. 912 (1970).

**C.   Petitioner's Claims Regarding Guilty Plea.**

Petitioner argues that his guilty plea was unlawfully induced and involuntary.  He states that he did not have a clear understanding of the charges against him, and the consequences of the plea.  He further states that his attorney advised him that if Petitioner did not accept the plea, he would not represent Petitioner at trial.

Due process requires that guilty pleas be entered intelligently and voluntarily.  <u>See</u> <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969).  A plea does not qualify as intelligent "unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"  <u>Bousley v. United</u> <u>States</u>, 523 U.S. 614, 618 (1998) (quoting <u>Smith v. O'Grady</u>, 312 U.S. 329, 334 (1941).  Where, prior to pleading guilty, a defendant is provided with a copy of the indictment which recites the charge against him, [s]uch circumstances, standing alone, give rise to a presumption that the defendant was informed of the

10

nature of the charge against him." Id. (citation omitted).  A
guilty plea entered by one fully aware of the direct consequences
of the plea is voluntary "'unless induced by threats (or promises
to discontinue improper harassment), misrepresentation (including
unfulfilled or unfulfillable promises), or perhaps by promises
that are by their nature improper as having no proper
relationship to the prosecutor's business (e.g. bribes).'" Brady
v. United States, 397 U.S. 742, 755 (1970) (quoting Shelton v.
United States, 246 F.2d 571, 572 n.2 (5th Cir. 1956) (en banc),
rev'd on confession of error on other grounds, 356 U.S. 26
(1958)).  The Court of Appeals for the Third Circuit has held
that the only direct consequences relevant to evaluating the
voluntariness of a guilty plea are the maximum prison term and
fine for the offense charged.  See Parry v. Rosemeyer, 64 F.3d
110, 114 (3d Cir. 1995), cert. denied, 516 U.S. 1058 (1996),
superseded by statute on other grounds as stated in Dickerson v.
Vaughn, 90 F.3d 87 (3d Cir. 1996).

The above standards govern the validity of a guilty plea
even when a criminal defendant protests his innocence despite his
entry of a guilty plea.

> [W]hile most pleas of guilty consist of both a waiver
> of trial and an express admission of guilt, the latter
> element is not a constitutional requisite to the
> imposition of criminal penalty [when, as in the instant
> case,] a defendant intelligently concludes that his
> interests require entry of a guilty plea and the record
> before the judge contains strong evidence of actual
> guilt.

North Carolina v. Alford, 400 U.S. 25, 37 (1970).  The Supreme Court noted further that "[b]ecause of the importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice, various state and federal court decisions properly caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence."  Id. at 38 n.10 (citations omitted).  Applying Alford, the Court of Appeals for the Third Circuit has held that "there must always exist some factual basis for a conclusion of guilt before a court can accept an Alford plea."  United States v. Mackins, 218 F.3d 263, 268 (3d Cir. 2000), cert. denied, 531 U.S. 1098 (2001).

Whether a guilty plea was entered intelligently and voluntarily is primarily a question of law subject to de novo review; to the extent that determination depends upon findings of historical fact by the state court, however, those factual findings carry a presumption of correctness.  See Marshall v. Lonberger, 459 U.S. 422, 431-32 (1983); Candelaria v. Lemaster, 201 F.3d 447 910th Cir. 1999) (Table, text in Westlaw); Hunt v. Dailey, 54 F. Supp.2d 1038, 1041-42 (D. Kan. 1999) (collecting cases).

12

Most courts look to the totality of events and circumstances preceding entry of a guilty plea in determining whether the defendant was informed and understood the nature of the charge. Some of the factors to be considered include:  (1) the complexity of the charge; (2) defendant's age; (3) defendant's record; (4) defendant's intelligence and education; (5) defendant's ability to comprehend what was being said to him; and (6) whether he was represented by counsel.  See United States v. Cefaratti, 221 F.3d 502, 508 (3d Cir. 2000); United States v. Fernandez, 205 F.3d 1020, 1025 (7th Cir. 2000); United States v. Mosley, 173 F.3d 1318, 1322-23 (11th Cir. 1999); United States v. Marks, 38 F.3d 1009, 1012 (8th Cir. 1994).

In this case, the transcript of the guilty plea in question demonstrates that the following colloquy occurred:

```
THE COURT:      Mr. McDaniel, I show you a plea form and
                ask is that your signature on the form?
        A:      Yes.
        Q:      Are the answers to the questions on this form
                your answers?
        A:      Yes.
        Q:      Did you understand all the questions you
                answered?
        A:      Yes.
        Q:      Did [your attorney] . . ., also review this
                form with you?
        A:      Yes.
        Q:      It is indicated on the plea form you wish to
                enter a guilty plea to this charge of
                robbery, second degree?
        A:      Yes.
        Q:      Are you aware for that offense you could get
                up to 10 years in jail, $100,000 fine, a $50
                penalty?
        A:      Yes.
```

13

```
Q:        You also understand you could get a parole
          ineligibility stip of up to five years with
          regard to a sentence of 10 years on this
          matter?
A:        Yes.
Q:        You understand that if you receive such a
          sentence you would have to serve five years
          of the sentence before you could be
          considered eligible for parole?
A:        Yes.
Q:        And you understand that the sentencing in
          this matter is going to be left up to the
          Court?
A:        Yes, I do.

                       * * *
BY ATTORNEY:   Mr. McDaniel, on November 28th, 1999
               were you in the Township of Lakewood?
A:        Yes, I was.
Q:        And at that time, did you enter a Wawa store?
A:        Yes, I did.
Q:        I understand you were strung out pretty much
          that particular day.  You have memory lapses
          as to portions of what happened that day?
A:        No, I remember everything.
Q:        Okay.  And there was a videotape of a theft
          from a woman behind the counter named Nicole
          Pompacello.  Do you remember that theft and
          subsequent altercation?
A:        Yes.
Q:        And you would agree that the violence
          employed after theft would be enough to make
          it clear that you had in fact committed a
          robbery; is that correct?
A:        Yes.
Q:        No further questions, Judge.
THE COURT:     I understand you are admitting that you
               directed and used force against the employee
               of the store as part of the completion of the
               theft and escaping.  Is that so?
A:        Yes, sir.
```

(Ra 29 at pp. 2-5).  The judge found that a sufficient factual

basis had been presented, and accepted the plea.  The plea form,

signed by Petitioner and Petitioner's counsel, evidences that

Petitioner understood the charges against him, the rights he was giving up by pleading guilty, the sentencing consequences of pleading guilty, and noted that he was not coerced or threatened into making the plea.  It also states that he was satisfied with his attorney's advice.  (Ra 22 at Da 3).

Petitioner raised this argument on direct appeal.  (Ra 22 at Da 45).  The Appellate Division rejected his argument without discussion.  (Ra 5).

Based on the record, it is clear that Petitioner understood the nature and elements of the charges against him.  The guilty plea was entered into voluntarily and intelligently.  There is no reason for this Court to disturb the trial judge's finding that the plea was voluntary.  Petitioner is not entitled to relief on this claim.

Further, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  This ground for a writ of habeas corpus, is therefore denied.

**D.   Petitioner's Claims Regarding Prosecutor's Withholding of Evidence.**

Under the umbrella of a prosecutorial misconduct claim, Petitioner argues that he is entitled to habeas relief because the prosecutor withheld evidence.  He claims that the prosecutor deliberately withheld and failed to disclose the victim cashier's record of stealing money from the Wawa (with regard to the 1999 incident).  He also argues that he has been deprived a copy of the videotape that was shown to the jury, and contends that the videotape did not reveal a robbery.  He further alleges that the lineup the victim in the 1999 incident was shown had only one Hispanic person and all African-Americans.  Moreover, he alleges that the grand jury indictment was based on hearsay evidence.

1.   Withholding of Evidence

The case of Brady v. Maryland, 373 U.S. 83 (1963), protects an individual's Fifth Amendment right to due process by requiring that the prosecution produce exculpatory evidence in its possession.  In order to sustain a Brady claim, three elements must be demonstrated: "(1) the prosecution must suppress or withhold evidence, (2) which is favorable, and (3) material to the defense."  See United States v. Perdomo, 929 F.2d 967, 970 (3d Cir. 1991)(citing Moore v. Illinois, 408 U.S. 786 (1972)).  The standard for materiality of the evidence withheld is the same standard from Strickland v. Washington, 466 U.S. 668, 694 (1984).  See Marshall v. Hendricks, 307 F.3d 36, 53 (3d Cir. 2002).

16

> The] touchstone of materiality is a "reasonable
> probability" of a different result, and the adjective
> is important. The question is not whether the defendant
> would more likely than not have received a different
> verdict with the evidence, but whether in its absence
> he received a fair trial, understood as a trial
> resulting in a verdict worthy of confidence. A
> "reasonable probability" of a different result is
> accordingly shown when the government's evidentiary
> suppression "undermines confidence in the outcome of
> the trial."

See Marshall v. Hendricks, 307 F.3d 36, 53 (3d Cir. 2002)

(quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)(other

citation omitted)).

In this case, Petitioner has not demonstrated that the

evidence allegedly withheld was favorable and material to the

defense.  Petitioner's claim that the prosecutor withheld the

videotape fails.  The record reflects that Petitioner and his

attorney reviewed the videotape at length prior to trial.  (Ra 27

at p. 9; "I have had the opportunity to review [the videotape]

with Mr. McDaniel at length, and I have also had the opportunity

to ask him to reconsider on the plea offer.")

With regard to the evidence regarding the Wawa employee's

termination from employment for stealing, and the Wawa employee's

photographic line-up procedure, the Court notes that Petitioner

pled guilty to the offense involving this Wawa employee.  It is

unclear how the evidence of that employee's termination would be

material, or favorable to the defense, in the trial concerning

the 2000 robbery of the Wawa.

17

In this case, Petitioner has not demonstrated how the government's alleged withholding any evidence undermined the confidence of the outcome of the trial.  A review of the record demonstrates that this case turned on credibility determinations by the jury, and on the jury's viewing and evaluation of the videotape.

Thus, Petitioner has not demonstrated that the outcome of his trial would have been different had the evidence of the clerk's termination of employment been submitted to the jury in the 2000 incident trial.  This ground for a writ of habeas corpus will be denied.

2.   Prosecutorial Misconduct

Moreover, Petitioner has not demonstrated any prosecutorial misconduct on the part of the prosecutor.  Habeas review of a claim based on prosecutorial misconduct is limited to determining whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982).  If it does not infect the entire trial, misconduct alone is not enough to warrant a new trial.  See id. at 220.  "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's

comments [or conduct] standing alone, for the statements or conduct must be viewed in context." United States v. Young, 470 U.S. 1, 11 (1985).

Thus, where a prosecutor's conduct during trial is challenged in habeas, "[t]he relevant question is whether the prosecutor's [conduct] 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181 (quoting Donnelly , supra). "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

In this case, a review of the record reveals that the prosecutor acted properly and did not commit any acts of misconduct with regard to either the guilty plea or the trial. Petitioner has not demonstrated that the prosecutor withheld any evidence.  Further, there was a quantum of evidence presented against Petitioner at trial, including the videotape of the incident, and the various witness's testimony.  Therefore, the trial was no so unfair as to deny Petitioner due process.

Thus, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." These grounds for a writ of habeas corpus, are therefore denied.

     3.   <u>Grand Jury</u>

     Furthermore, Petitioner claims that the prosecutor failed to present exculpatory evidence to the grand jury, and that hearsay evidence was used to indict him. However, the Fifth Amendment right to a grand jury presentation in felony cases is not applicable to the states. <u>See</u> <u>Alexander v. Louisiana</u>, 405 U.S. 625, 633 (1972). Thus, any claim of defect in a state grand jury proceeding is a claim of a state-law error that does not raise federal constitutional concerns unless it rises to the level of a due process deprivation. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991). <u>Cf.</u> <u>United States v. Console</u>, 13 F.3d 641, 671-72 (3d Cir. 1993) (with the exception of a claim of racial discrimination in the selection of grand jurors, a petit jury's guilty verdict renders harmless any prosecutorial misconduct before the indicting grand jury) (citing <u>Vasquez v. Hillery</u>, 474 U.S. 254 (1986)). Where any error in a state grand jury proceeding is rendered harmless by a subsequent petit jury

verdict, there is no due process deprivation.  See, e.g., Lopez
v. Riley, 865 F.2d 30, 32 (2d Cir. 1989); United States v.
Mechanik, 475 U.S. 66, 72-73 (1986) (involving a violation of
Fed. R. Crim. P. 6(d)).

Here, the petit jury found Petitioner guilty of the crimes
charged beyond a reasonable doubt, rendering harmless any error
in the state grand jury proceedings.  Thus, Petitioner is not
entitled to relief on this claim.

**E.   Petitioner's Claims Regarding Ineffective Assistance of
Counsel.**

Petitioner argues that his attorney did not perform in his
favor, and was instead loyal to the prosecution.  He states that
he gave false advice to Petitioner to accept the plea on the 1999
indictment.  Petitioner alleges that his attorney told him
several times before trial that if he did not accept the plea to
the 1999 robbery, he would not represent him at trial.
Petitioner asked for him to relieve himself as counsel, but the
attorney did not do so.  Petitioner also states that appellate
counsel was ineffective for not raising these issues on appeal.

In Strickland v. Washington, 466 U.S. 668 (1984), the
Supreme Court held that in order to establish that trial counsel
is ineffective, the petitioner must show that "counsel's
performance was deficient," in that "counsel made errors so
serious that counsel was not functioning as 'counsel' guaranteed
. . . by the Sixth Amendment," and "that the deficient

21

performance prejudiced the defense." Id. at 687.  In order to establish prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Fritz , 105 N.J. 42, 60-61 (1997)(quoting Strickland, 466 U.S. at 694).  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996), cert. denied 519 U.S. 1020 (1996).

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective

assistance of counsel on a first direct appeal as of right.
Evitts v. Lucey, 469 U.S. 387 (1985).  Claims of ineffective
assistance of appellate counsel are evaluated under the
Strickland standard.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d
Cir. 2004); Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa.
July 26, 2004).  Appellate counsel does not have a duty to
advance every nonfrivolous argument that could be made, see Jones
v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may
establish that appellate counsel was constitutionally ineffective
"if he shows that counsel omitted significant and obvious issues
while pursuing issues that were clearly and significantly
weaker."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

     Moreover, in order to prevail on a claim that appellate
counsel was ineffective, a petitioner must show not only that
counsel's performance fell below an objective standard of
reasonableness, but also that there was a reasonable probability,
but for counsel's deficiency in raising the arguments on appeal,
that the conviction would have been reversed on appeal.  See
Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert.
dismissed, 527 U.S. 1050 (1999).

     The Strickland standards also apply to guilty pleas alleged
to be the result of ineffective assistance of counsel.  See Hill
v. Lockhart, 474 U.S. 52 (1985).  To prevail on an ineffective
assistance claim in a guilty plea context, a petitioner must

show: (1) counsel's performance relating to the plea was deficient; (2) the deficient performance prejudiced Petitioner's case, because there was a reasonable probability that but for counsel's errors, the defendant would <u>not</u> have pled guilty, and would have gone to trial.  See <u>Strickland</u>, 466 U.S. at 687-88; <u>Hill</u>, 474 U.S. at 59.

Petitioner raised the issue of ineffective counsel in the state courts in his direct appeal and in his PCR motion, and denied his claims without discussion, except to state on appeal from the PCR denial that Petitioner "had failed to state, with particularity, counsel's alleged ineffectiveness and how it deprived him of his right to a fair trial."  (Ra 24 at p. 4).

After a thorough review of the state court record, this Court agrees that Petitioner has not demonstrated that either trial or appellate counsel were ineffective under the <u>Strickland</u> standard.  With regard to the plea, Petitioner admitted that his decision to plea was largely based upon his hope that his sentence would run concurrent to the sentence imposed for the 2000 Wawa incident.  Thus, counsel's advice to Petitioner to accept the plea was not deficient, but rather, constituted sound strategy for purposes of sentencing.  As for the appeal, Petitioner has not demonstrated that non-frivolous claims were overlooked by appellate counsel, or that the conviction may have

been reversed on appeal had appellate counsel made additional or different arguments.

The record reveals that Petitioner was aware of the consequences of the plea agreement, and that he was satisfied with his attorney's advice.  Upon taking the plea from Petitioner, the court warned Petitioner that it is the Court who would set the sentence, not the attorneys.  Additionally, with regard to the trial, Petitioner's conclusory allegations that his attorney was conspiring with the prosecutor, and the fact that Petitioner and his attorney may not have been "on the same page" with regard to trial strategy, does not render the attorney's performance deficient.

Nor has Petitioner demonstrated that the results of his trial would have been different had his attorney acted some other way in defending him at trial.  A review of the record reveals that the attorney presented a defense with the facts he had to work with, including the incriminating videotape, and the witness testimony from those involved in the altercation.  There was sufficient evidence presented for the jury to examine and determine Petitioner's guilt.  Further, with regard to the plea, Petitioner's sentence on the plea was made concurrent to his sentence on the trial, thus, there was no prejudice to Petitioner.

25

Petitioner has demonstrated neither that counsel's performance was deficient, nor that the results of the trial would have been different.  As the state courts applied the correct <u>Strickland</u> standard to Petitioner's claims and reasonably applied the facts, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  These grounds for a writ of habeas corpus, are therefore denied.

**F.   <u>Petitioner's Claims Regarding Excessive Sentence.</u>**

Petitioner argues that his sentence was excessive.  He states that the sentencing court did not consider any mitigating factors, such as his age, the amount of money stolen, and the credibility of witnesses.[2]  He further states that in violation

_____

[2]  Petitioner's complaints about the sentence, that the trial court rendered an excessive sentence, that he will serve too much time for his crimes, allege only claims that the sentence violates state law, not that it violates the Constitution or laws of the United States.  Accordingly, any such state law error is not a ground for relief under 28 U.S.C. § 2254.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 680 (1990))).

of the Supreme Court cases of <u>Apprendi v. New Jersey</u>, and <u>United States v. Booker</u>, the sentencing judge found additional facts at sentencing by preponderance of the evidence.

The Appellate Division, on direct appeal, found that "the sentence imposed by the trial court was well within the discretion vested by the Code and the aggravating and mitigating factors were properly supported by competent, credible evidence." (Ra 5 at p. 6).

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 471, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  In <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."  542 U.S. 296, –, 124 S. Ct. 2531, 2537 (2004) (internal quotations omitted).  Most recently, in <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court applied the rule of <u>Apprendi</u> to the U.S. Sentencing Guidelines, holding that the Guidelines are not mandatory, but are merely advisory.

However, the rules announced in these cases are not applicable retroactively to cases on collateral review.  <u>See generally</u> <u>In re Olopade</u>, 403 F.3d 159 (3d Cir. 2005) (finding that the decision of the Supreme Court in <u>Booker</u> does not apply retroactively to cases on collateral review); <u>United States v. Swinton</u>, 333 F.3d 481 (3d Cir.), <u>cert. denied</u>, 540 U.S. 977 (2003) (holding that <u>Apprendi</u> does not apply retroactively to cases on collateral review); <u>In re Turner</u>, 267 F.3d 225 (3d Cir. 2001) (holding that <u>Apprendi</u> does not apply retroactively to cases on collateral review).  <u>See also</u> <u>United States v. Price</u>, 400 F.3d 844, 849 (10th Cir.), <u>cert. denied</u>, 126 S. Ct. 731 (2005) (<u>Blakely</u> does not apply retroactively to cases on collateral review).

In any event, it does not appear that the trial court violated the rule of <u>Apprendi</u>/<u>Blakely</u>.  The Supreme Court has held that judicial fact-finding in support of a sentencing judge's discretion to sentence within a statutory range does not violate the constitution.  <u>See</u> <u>Booker</u>, 543 U.S. at 233; <u>Blakely</u>, 542 U.S. at 308-09.  In this case, the trial court did not sentence Petitioner beyond the statutory maximum in violation of <u>Apprendi</u> and <u>Blakely</u>.  Petitioner is not entitled to relief on this claim.

28

G.    **Petitioner's Claims Regarding Locked Courtroom.**

Petitioner argues that the Sixth Amendment prohibits the court from keeping the public out of a trial.  He notes that the prosecutor, judge, and his attorney had the doors locked so that Petitioner's family would not be in the courtroom.  He also states that the doors were later opened for the reading of the jury charge.

However, this Court cannot find any proof in the record that the courtroom was locked.  Trial transcripts do not reveal any evidence of a closure of the courtroom.  Likewise, it does not seem that Petitioner raised this issue to the state courts.  Petitioner contends that his statement on the record that his aunt was not present, so he was not going to testify is evidence that the Judge had locked the courtroom.  This Court disagrees and finds no evidence in support of Petitioner's contention.  He is not entitled to habeas relief on these grounds.[3]

---

[3]  The Court notes that the Sixth Amendment, applicable to the States through the Fourteenth Amendment, guarantees a defendant a public trial.  However, the right is not absolute.  Closure of the courtroom is justified if "(1) the proponent of closure advances an overriding interest likely to be prejudiced; (2) the closure is no broader than necessary; (3) the trial court considers reasonable alternatives to closure; and (4) the trial court makes findings adequate to support closure."  Bobb v. Senkowski, 196 F.3d 350, 352 (2d Cir. 1999)(citing Waller v. Georgia, 467 U.S. 39, 48 (1984)).

H.  **Trial Judge Bias**

Petitioner alleges that the trial judge was biased towards him during the trial and the sentencing.

In order to demonstrate judicial misconduct for purposes of habeas relief, a petitioner must show "actual bias" and that he was treated "unfairly" by the trial judge.  See Marshall v. Hendricks, 103 F. Supp.2d 749, 799 (D.N.J. 2000)(Irenas, J.), rev'd in part on other grounds, 307 F.3d 36 (3d Cir. 2002), cert. denied, 538 U.S. 911 (2003)(citation omitted).  Adverse rulings on motions and objections are not sufficient to prove judicial bias.  See id. (citation omitted).  Rather, "there must be an extremely high level of interference by the trial judge which creates a pervasive climate of partiality and unfairness."  Id. (citation omitted).  "A mere allegation or the mere appearance of bias does not establish bias."  Id. (citation omitted).

In this case, a review of the record reveals no bias on the part of the trial judge.  The petitioner has not demonstrated that the judge was biased towards his socioeconomic status, race, or that the judge created a "pervasive climate of partiality and unfairness."  In fact, the record reveals that the judge was quite fair to Petitioner and counsel, during the trial and even post-trial during motions, allowing Petitioner to speak his mind. There is no evidence in the record of interference, partiality or unfairness.

30

Petitioner is not entitled to relief on this claim, as he has not demonstrated a constitutional violation or other grounds for habeas relief.

## I.   **Petitioner's Motions**

Petitioner filed a motion for discovery (docket entry 13), asking for the production of court documents, the surveillance videotape, and transcripts.  Respondents have opposed the motion.

Rule 6 of the Rules Governing Section 2254 Cases states that:  "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery.  If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A."

In this case, the Court has denied Petitioner's habeas claims, and the requested discovery will not affect these rulings.  The record provided ample support for this Court's rulings, and no further discovery is needed.  Petitioner's motion will be denied.

Petitioner also filed a motion for counsel (docket entry 16).  He states that he should be afforded counsel in this matter because his is indigent, has limited access to the law library, the issues involved in the case are complex, the case warrants extensive discovery, he has limited knowledge of the law, and he is "hopelessly retarded" and was born with cerebral palsy.

31

To begin, there is no Sixth Amendment right to appointment of counsel in habeas proceedings.  See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987)("our cases establish that the right to appointed counsel extends to the first appeal of right, and no further"); Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997)(holding that there is no statutory or constitutional right of counsel conferred upon indigent civil litigants); Reese v. Fulcomer, 946 F.2d 247, 263 (3d Cir. 1991), cert. denied, 503 U.S. 988 (1992)("there is no 'automatic' constitutional right to counsel in federal habeas corpus proceedings); Mitchell v. Wyrick, 727 F.2d 773, 774 (8th Cir. 1984), cert. denied, 469 U.S. 823 (1984)(appellant not entitled to attorney pursuant to the Sixth Amendment because state post-conviction proceedings are civil in nature, where the Sixth Amendment only applies to criminal cases).

Title 18 of the United States Code, section 3006A(2)(B) states that counsel may be appointed to an indigent habeas petitioner where the "interests of justice so require."[4]  In determining whether the interests of justice require appointment of counsel, the Court must examine whether or not the petitioner

---

[4] Section 3006A(2) provides:  "Whenever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . .
(B) is seeking relief under section 2241, 2254, or 2255 of title 28."

has presented a meritorious claim.  See Biggins v. Snyder, 2001 WL 125337 at * 3 (D. Del. February 8, 2001)(citing Reese v. Fulcomer, 946 F.2d 247, 263-64 (3d Cir. 1991))(other citations omitted).  Next, the Court must determine whether the appointment of counsel will benefit the petitioner and the Court by examining the legal complexity of the case and the petitioner's ability to present his claims and investigate facts.  See id. (citing Reese, 946 F.2d at 264; Parham v. Johnson, 126 F.3d 454, 457-58 (3d Cir. 1997); Tabron v. Grace, 6 F.3d 147, 155-56 (3d Cir. 1993))(other citations omitted).  "Where these issues are 'straightforward and capable of resolution on the record,' or when the petitioner has 'a good understanding of the issues and the ability to present forcefully and coherently his contentions,' the court would not abuse its discretion in declining to appoint counsel."  Id. (citations and quotations omitted); see also Paul v. Attorney General of New Jersey, 1992 WL 184358 at * 1 (D.N.J. July 10, 1992)(stating that the factors the court should consider in appointing counsel include:  "(i) the likelihood of success on the merits; (ii) the complexity of the legal issues raised by the complaint; and (iii) the ability of the prisoner to investigate and present the case.").

In this case, the Court has determined that Petitioner has not presented a meritorious claim.  Further, there is no evidence in the record that Petitioner suffers from cerebral palsy or

retardation.  Petitioner has proven his ability to proceed with this matter pro se by filing over 130 pages of facts and legal arguments, as well as various motions, without formal assistance. Therefore, the motion for counsel will be denied.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.


                          S/ Anne E. Thompson
                         ANNE E. THOMPSON
                    United States District Judge

Dated: August 8, 2006

34